**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

KETAN RAMESHKUMAR PATEL and ARTY KETAN PATEL,

Plaintiffs,

v.

CARRIE M. SELBY, in her official capacity as Director of United States Citizenship and Immigration Services California Service Center; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES CALIFORNIA SERVICE CENTER; JOSEPH B. EDLOW, in his official capacity as Director of United States Citizenship and Immigration Services; and UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,

Defendants.

Case No. 8:26-cv-00055-JWH-DFM

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [ECF No. 19]**

Before the Court is the motion of Defendants Carrie M. Selby, Joseph B. Edlow, the United States Citizenship and Immigration Services ("USCIS"), and USCIS California Service Center to dismiss the Amended Complaint of Plaintiffs Ketan Rameshkumar Patel and Arty Ketan Patel.[1] The Court conducted a hearing on the Motion in May 2026. After considering the papers filed in support and in opposition,[2] as well as the argument of counsel at the hearing, the Court **GRANTS** Defendants' Motion, for the reasons set forth below.

## I. BACKGROUND

### A. Legal Landscape

As a part of the Immigration Act of 1990, Congress established the employment-based, fifth preference category ("EB-5") immigrant investor visa program. *See* Pub. L. No. 101-649, § 121(a) (Nov. 29, 1990) (codified at 8 U.S.C. § 1153(b)(5)). Under the EB-5 statutory scheme, a foreign national who invests at least $800,000 in a targeted employment area in a new commercial enterprise that will create full-time positions for at least 10 qualifying employees may apply for lawful permanent resident status. *See* 8 U.S.C. §§ 1153(b)(5)(A) & (B). Section 1255 of Title 8 confers upon the Secretary of Homeland Security the discretionary authority to adjust the status of noncitizens to lawful permanent residents. Specifically, the statute provides that the status of a qualifying noncitizen "may be adjusted by the [Secretary], in his discretion and

---

1 *See* Defs.' Mot. to Dismiss (the "Motion") [ECF No. 19].

2 The Court considered the documents of record in this action, including the following papers: (1) First Am. Compl. (the "Amended Complaint") [ECF No. 16]; (2) Motion; (3) Pls.' Opp'n to the Motion (the "Opposition") [ECF No. 20]; (4) Pls.' Notice of Suppl. Authority [ECF No. 22]; (5) Defs.' Reply in Supp. of the Motion (the "Reply") [ECF No. 23]; (6) Pl.'s Notice of Suppl. Authority [ECF No. 26]; and (7) Pl.'s Notice of Suppl. Authority [ECF No. 29].

under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence." 8 U.S.C. § 1255(a).

In 2022, Congress enacted significant reforms through the EB-5 Reform and Integrity Act, Pub. L. No. 117-103, Div. BB (Mar. 15, 2022). Among other reforms, the changes authorized a foreign national seeking EB-5 and permanent resident status to file concurrently his or her Form I-526E petition for EB-5 status and Form I-485 application for permanent resident status, provided that visa numbers are available.

**B. Factual Allegations**

Plaintiffs, citizens of India, invested "$800,000 in a new commercial enterprise located in a USCIS-designated regional center [and] created at least 10 jobs for American workers."[3] Based upon that investment, in March 2025, Plaintiffs simultaneously filed a Form I-526E petition for Mr. Patel and Form I-485 applications for each of them, and they paid the associated fees.[4] USCIS approved Mr. Patel's Form I-526E petition in August 2025, but Plaintiffs' Form I-485 applications remain pending.[5] Mr. Patel's Form I-526E Approval Notice indicates that his Visa Classification is "INA§ 203(b)(5) . . . Reserved: RR-6 Rural Principal Regional Center Investor," for which classification visas remain available for Indian nationals.[6]

Plaintiffs allege that the delay in the adjudication of their Form I-485 applications has caused them hardships including professional stagnation and emotional strain and that it has "effectively placed Plaintiffs' lives on hold."[7]

---

[3] Amended Complaint ¶ 30.

[4] *Id.* at ¶¶ 31 & 32.

[5] *Id.* at ¶¶ 34 & 35.

[6] *Id.* at ¶ 36.

[7] *Id.* at ¶¶ 42-46.

### C. Procedural History

Plaintiffs commenced this instant action in January 2026,[8] and in March 2026, Plaintiffs filed the operative Amended Complaint.[9] In that pleading, Plaintiffs assert the following three claims for relief:

- violation of the Administrative Procedure Act (the "APA"), 5 U.S.C. § 706(1);
- mandamus, 28 U.S.C. § 1361; and
- violation of Due Process rights.[10]

In April 2026, Defendants moved to dismiss the Amended Complaint.

## II. LEGAL STANDARD

### A. Rule 12(b)(1)—Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Vacek v. U.S. Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted)).

"Under Rule 12(b)(1) [of the Federal Rules of Civil Procedure], a defendant may challenge the plaintiff's jurisdictional allegations in one of two ways." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). A ***facial*** attack accepts the plaintiff's allegations as true but asserts that those allegations "are insufficient on their face to invoke federal jurisdiction." *Id.* (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). The court resolves a

---

[8] Compl. [ECF No. 1].

[9] *See* Amended Complaint.

[10] *Id.*

facial attack "as it would a motion to dismiss under Rule 12(b)(6)": in accepting the plaintiff's allegations as true and drawing all reasonable inferences in her favor, the court determines "whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Id.*

In contrast, a ***factual*** attack contests "the truth of the plaintiff's factual allegations," typically by introducing evidence outside the pleadings. *Id.* "When the defendant raises a factual attack, the plaintiff must support her jurisdictional allegations with 'competent proof,' under the same evidentiary standard that governs in the summary judgment context." *Id.* (internal citation omitted). The plaintiff bears the burden of proving—by a preponderance of the evidence—that she meets each of the requirements for subject-matter jurisdiction, with one caveat: if the existence of jurisdiction turns on "disputed factual issues," then the court itself may resolve those factual disputes. *Id.*

**B. Rule 12(b)(6)—Failure to State a Claim**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In ruling on a Rule 12(b)(6) motion, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Am. Family Ass'n*, 277 F.3d at 1120. Although a complaint attacked by a Rule 12(b)(6) motion "does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Twombly*, 550 U.S. at 555–56 (citations and footnote omitted). Accordingly, to

survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," which means that a plaintiff must plead sufficient factual content to "allow[] the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A complaint must contain "well-pleaded facts" from which the court can "infer more than the mere possibility of misconduct." *Id.* at 679.

## III. ANALYSIS

### A. Subject Matter Jurisdiction

Defendants argue that 8 U.S.C. § 1252(a)(2)(B)(ii) strips this Court of jurisdiction to review Plaintiffs' APA and mandamus claims. The Court disagrees.

The APA's right to judicial review does not apply when "statutes preclude judicial review." 5 U.S.C. § 701(a)(1). When a court considers whether a statute precludes judicial review, it may rely on "a familiar principle of statutory construction: the presumption favoring judicial review of administrative action." *Kucana v. Holder*, 558 U.S. 233, 251 (2010). That presumption, however, may be overcome by "clear and convincing evidence" of congressional intent to preclude judicial review. *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 64 (1993) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 141 (1967)).

Section 1252(a)(2)(B)(ii) of Title 8 provides in relevant part that "no court shall have jurisdiction to review . . . any other decision or action of [] the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of [] the Secretary of Homeland Security." The statute at issue here—8 U.S.C. § 1255(a)—grants the Secretary of

Homeland Security the discretionary authority to adjust the status of aliens to legal permanent residents.[11]

Thus, Defendants assert that this Court lacks jurisdiction over Plaintiffs' claims concerning the pace at which the Secretary exercises his discretion to grant or deny their applications because the pace of adjudication is a "decision or action" over which the Secretary has discretion. In support of that argument, Defendants cite *Zia v. Garland*, 112 F.4th 1194, 1200 (9th Cir. 2024), in which the Ninth Circuit applied the Supreme Court's reasoning in *Patel v. Garland*, 596 U.S. 328 (2022), to conclude that 8 U.S.C. § 1252(a)(2)(B)(ii) strips federal courts of jurisdiction to hear challenges to decisions of the Secretary—through the Board of Immigration Appeals (the "BIA")—regarding good-faith marriage waivers. However, neither *Zia* nor *Patel* controls here because both of those cases dealt with discrete affirmative decisions or actions, whereas, here, Plaintiffs complain about a lack of action by the Secretary.

In *Zia*, the challenge addressed the termination of a petitioner's permanent resident status based upon the BIA's decision that the petitioner did not enter into his marriage in good faith. *See Zia*, 112 F.4th at 1198. In *Patel*, the challenge addressed a petitioner's application for an adjustment of status because the petitioner misrepresented his citizenship status on a driver's license application. *See Patel*, 596 U.S. at 333-34. In contrast, Plaintiffs here challenge the Secretary's failure to resolve their I-485 applications, and Defendants do not present any reason or decision explaining Plaintiffs' complained-of delay.

---

[11] The Homeland Security Act of 2002 transferred the functions described in 8 U.S.C. § 1255(a) from the Attorney General to the Department of Homeland Security, 6 U.S.C. § 271(b), and all references to the Attorney General are to be read as referring to the Secretary, *see id.* at § 557; *see also Clark v. Martinez*, 543 U.S. 371, 375 n.1 (2005).

Defendants also cite decisions by the Third, Fourth, Fifth, Eighth, and Eleventh Circuits that purportedly hold "that Section 1252(a)(2)(B)(ii) bars jurisdiction over USCIS's pace of adjudication of I-485 applications."[12] While all five of those courts concluded that jurisdiction was absent, the reasoning in those decisions is inapplicable for the same reason that *Zia* is inapplicable: those cases all concerned delay arising from an affirmative decision by the Secretary about how to manage visa supply and demand. *See Kale v. Alfonso-Royals*, 139 F.4th 329, 331-33 (4th Cir. 2025); *Kanapuram v. Dir. United States Citizenship & Immigr. Servs.*, 131 F.4th 1302, 1304-06 (11th Cir. 2025); *Geda v. Dir. United States Citizenship & Immigr. Servs.*, 126 F.4th 835, 838-41 (3d Cir. 2025); *Cheejati v. Blinken*, 106 F.4th 388, 391-93 (5th Cir. 2024); *Thigulla v. Jaddou*, 94 F.4th 770, 772-73 (8th Cir. 2024).

In all five of those out-of-circuit cases, the issue was whether the delay resulting from USCIS's retrogression policy—which set a cutoff date for visa applications necessitated by a statutory limit to the number of available visas—violated the APA. *See Kale*, 139 F.4th at 331-33; *Kanapuram*, 131 F.4th at 1304-06; *Geda*, 126 F.4th at 838-41; *Cheejati*, 106 F.4th at 391-93; *Thigulla*, 94 F.4th at 772-73. Thus, all five courts either expressly noted or assumed that 8 U.S.C. § 1252(a)(2)(B)(ii) stripped jurisdiction because the delay was the result of a decision or action rather than hidden policy choices or failure to act. *See Kale*, 139 F.4th at 334-36 (reasoning that "agency *inaction* is not to be conflated with *action*," and that "'high-level' and 'hidden policy choices' leading to an agency's failure to act d[o] not constitute a 'decision or action'" (citations omitted) (emphasis in original)); *Kanapuram*, 131 F.4th at 1307 (characterizing "delaying the grant of Form I-485 applications" as "the challenged USCIS action"); *Geda*, 126 F.4th at 842-43 (characterizing the "Adjudication Hold

---

12 Motion 7:3-5.

Policy" as a "decision—whether and how to adjust [petitioners'] status"); *Cheejati*, 106 F.4th at 394-95 (reasoning that "retrogression hold policies are effectuated through discrete acts"); *Thigulla*, 94 F.4th at 775 (describing "the decision to delay adjudicat[ion]" as "based on the creation of the Adjudication Hold Policy"). Here, there is no such policy or reasoned decision for the alleged delay in adjudicating Plaintiffs' Form I-485 applications. Accordingly, because there is no "action or decision" at issue—only inaction—the Court concludes that it possesses subject matter jurisdiction over Plaintiffs' claims.

**B. Viability of Plaintiffs' Claims for Relief**

Turning to the merits, Defendants argue that all three of Plaintiffs' claims fail under Rule 12(b)(6). The Court agrees.

**1. APA Claim**

In their Amended Complaint, Plaintiffs allege that Defendants' delay in adjudicating their Form I-485 applications gives rise to a remedy under 5 U.S.C. § 706(1), which authorizes a court to "compel agency action unlawfully withheld or unreasonably delayed." In their Motion, Defendants first argue that Plaintiffs fail to state an APA claim because Plaintiffs fail to identify a non-discretionary action that Defendants must undertake within a required time frame.[13] Defendants' argument is not convincing. "It is pellucidly clear that there is a nondiscretionary duty to adjudicate completed visa applications." *Nawaz v. Rubio*, 2025 WL 1091548, at *3 (C.D. Cal. Mar. 4, 2025) (citing *Patel v. Reno*, 134 F.3d 929, 932 (9th Cir. 1997) ("A consular office is required by law to act on visa applications.")). Furthermore, the pace of that adjudication is not discretionary under the APA, which "imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time,' 5 U.S.C. § 555(b), and authorizes a reviewing court to

[13] *Id.* at 9:16-19.

'compel agency action unlawfully withheld or unreasonably delayed,' *id.* § 706(1)." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003). Accordingly, the Court concludes that at the motion-to-dismiss stage, Plaintiffs have adequately pleaded Defendants' non-discretionary duty to act.

Second, Defendants assert that even if they have a non-discretionary duty to act, Plaintiffs' allegations of a 14-month delay cannot state a claim for unreasonable delay. To determine whether an agency's delay is unreasonable under the APA, courts apply the following so-called six "*TRAC* factors" set forth in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984):

- the time agencies take to make decisions must be governed by a "rule of reason";
- when Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for that rule of reason;
- delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
- the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
- the court should also take into account the nature and extent of the interests prejudiced by delay; and
- the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed,'" *id.* at 79-80 (citations omitted); *see also In re Nat. Res. Def. Council, Inc.*, 956 F.3d 1134, 1138-39 (9th Cir. 2020) (applying the *TRAC* factors).

Plaintiffs contend that applying the *TRAC* factors at the motion-to-dismiss stage is premature and that in order to do so, the Court would have to

convert Defendants' Motion into a motion for summary judgment.[14] While Plaintiffs are correct that the *TRAC* factors are often inappropriate for consideration at the motion to dismiss stage, "[t]here is no categorical prohibition on deciding unreasonable-delay claims at the motion-to-dismiss stage," and "the question of whether discovery is necessary depends, as with any sort of claim, on the particular Complaint." *Da Costa v. Immigr. Inv. Program Off.*, 643 F. Supp. 3d 1, 12 (D.D.C. 2022), *aff'd*, 80 F.4th 330 (D.C. Cir. 2023). Here, the Court concludes that it is appropriate to weigh the *TRAC* factors at the motion-to-dismiss stage. *See, e.g.*, *Sekar v. Tarango*, 2026 WL 1454439, at *5 (C.D. Cal. May 15, 2026).

**a. First and Second Factors: Reasonableness of the Delay**

"The most important [*TRAC* factor] is the first factor, the 'rule of reason,' though it, like the others, is not itself determinative." *In re A Cmty. Voice*, 878 F.3d 779, 786 (9th Cir. 2017). "This factor requires that the time it takes for the agency to act is governed by a rule of reason." *Denisov v. Mayorkas*, 2024 WL 3522047, at *5 (N.D. Cal. July 23, 2024) (citation modified). Here, Defendants argue that the process for adjudicating Plaintiffs' applications follows a first-in, first-out ("FIFO") system.[15] Courts in this district and elsewhere have concluded that that the FIFO process constitutes a rule of reason. *See, e.g.*, *Sekar*, 2026 WL 1454439, at *5, *Kamath v. Campagnolo*, 2021 WL 4913298, at *3 (C.D. Cal. Aug. 13, 2021), *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 51 (D.D.C. 2021).

Plaintiffs respond that in view of their allegations that USCIS has adjudicated Form I-485 applications filed after those of Plaintiffs, it is plausible that Defendants are not following the FIFO process with respect to Plaintiffs'

---

[14] Opposition 14:5-15:16.

[15] Motion 11:18-21.

applications.[16] However, the Amended Complaint lacks specific facts supporting that general allegation. Plaintiffs' Opposition includes a table that purports to list individual examples of applications that are similar to those of Plaintiffs. However, not only is that table absent from the Amended Complaint, but it fails to make plausible the allegation that Defendants are not following the FIFO policy with respect to Plaintiffs' applications. As Defendants note, there are myriad factors that determine the length of adjudications for applications,[17] and merely pointing to a handful of examples in which later-filed applications were adjudicated first does not indicate that Defendants are not applying the FIFO policy.

The second *TRAC* factor directs a court to consider whether a statutory timetable supplies content for the rule-of-reason inquiry. *See TRAC*, 750 F.2d at 80. Plaintiffs refer to 8 U.S.C. § 1571(b), which provides that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." Plaintiffs also cite language from the EB-5 Reform and Integrity Act of 2022, in which Congress articulated a goal of completing adjudications, on average, not later than 180 days for the type of application relevant here. *See* Pub. L. No. 117-103 § 106(b), 136 Stat. 49, 1103-04 (Mar. 15, 2022).[18] However, the weight that the Court affords to this factor is minimal, given the substantial body of case law dismissing claims of unreasonable delay in situations in which applications have been pending far longer than 180 days—up to five years. *See Sekar*, 2026 WL 1454439, at *6 (noting that "the strong weight of authority indicates that the 14 months that have passed since Plaintiffs filed the Petition

---

[16] Opposition 17:17-18:10 (citing Amended Complaint ¶ 49).

[17] Reply 9:10-13.

[18] Opposition 19:15-20.

and Applications does not constitute unreasonable delay") (collecting cases); *see also Cai v. Jaddou*, 2025 WL 1561277, at *3 (C.D. Cal. Jan. 2, 2025) ("District courts in California have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." (quoting *Varzaghani v. Mayorkas*, 2024 WL 2952141, at *4 (C.D. Cal. June 5, 2024)).

The first and second *TRAC* factors thus weigh against Plaintiffs. And ultimately, the 14-month delay at issue here is not sufficient to state a claim of unreasonable delay.

**b. Third and Fifth Factors: Balancing the Interests**

Courts in the Ninth Circuit "often consider the third and fifth factors together, evaluating the health and human welfare and interests prejudiced by the delay." *Shahijani v. Laitinen*, 2023 WL 6889774, at *4 (C.D. Cal. Oct. 6, 2023). When, as here, plaintiffs suffer hardships including professional stagnation and emotional strain that have "effectively placed [p]laintiffs' lives on hold,"[19] courts consider "the government's competing priorities and the fact that pushing [the plaintiffs'] application to the front of the line would delay the applications of others, who also have human welfare and interests at stake." *Id.* While the Court is sympathetic to Plaintiffs' hardships, the balance of interests does not weigh in favor of Plaintiffs.

**c. Fourth Factor: Effect of Expediting Plaintiffs' Application on Agency Priorities**

"Courts have 'refused to grant relief, even though all the other factors considered in *TRAC* favored it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain.'" *See Sekar*, 2026 WL 1454439, at *7 (quoting *Mashpee Wampanoag*

---

[19] Amended Complaint ¶¶ 42-46.

*Tribal Council*, 336 F.3d at 1100). Here, despite Plaintiffs' argument that there is no evidence of a queue,[20] granting Plaintiffs' requested relief would necessarily result in Plaintiffs receiving priority to the detriment of similarly situated applicants. Accordingly, this factor favors Defendants.

**d. Sixth Factor: Agency Bad Faith**

The sixth factor "merely [confirms] that agency delay need not be intentional to be unreasonable." *Shahijani*, 2023 WL 6889774, at *5 (quoting *Feng v. Beers*, 2014 WL 1028371, at *5 (E.D. Cal. Mar. 14, 2014)). Here, there are no allegations of agency bad faith. Thus, "this factor is neutral." *Id.*

**e. Conclusion: the Delay Is Reasonable**

Because the first, most important factor weighs strongly in favor of Defendants, and none of the other factors weighs strongly in favor of Plaintiffs, the Court concludes that Plaintiffs have failed to allege plausibly unreasonable delay. Accordingly, Defendants' Motion is **GRANTED** with respect to Plaintiffs' unreasonable-delay-APA claim.

**2. Mandamus Claim**

The Ninth Circuit has recognized that relief sought under the Mandamus Act and under § 706(1) of the APA is "essentially the same." *Indep. Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997). Therefore, because the Court dismisses Plaintiffs' APA claim, it also dismisses Plaintiffs' Mandamus Act claim. *See Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022) (explaining that a court "may elect to analyze the APA claim only" when a plaintiff asserts both APA and mandamus claims). Defendants' Motion is **GRANTED** with respect to Plaintiffs' mandamus claim.

---

[20] Opposition 25:7-11.

**3. Due Process Claim**

Plaintiffs allege that the delayed adjudication of their Form I-485 applications violates their Fifth Amendment right to Due Process.[21] In their Motion, Defendants contend that Plaintiffs' Due Process claim fails because Plaintiffs do not have a protectable property or liberty interest.[22] The Court agrees.

"A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution." *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994). A request for a discretionary immigration benefit does not create a constitutionally protected liberty or property interest. *See Mendez-Garcia v. Lynch*, 840 F.3d 655, 665 (9th Cir. 2016) ("[A]liens have no fundamental right to discretionary relief from removal for purposes of due process and equal protection because such relief is a privilege created by Congress.") (internal quotation marks and citation omitted); *Orellana v. Garland*, 2024 WL 2795192, at *2 (9th Cir. May 31, 2024) ("[A] grant of adjustment of status is purely discretionary, and an alien has no constitutionally protected liberty interest in a grant of discretionary relief."). In fact, "courts routinely reject due process challenge to delays in adjudicating asylum applications." *Yilmaz v. Jaddou*, 697 F. Supp. 3d 951, 962 (C.D. Cal. 2023) (citing *Varol v. Radel*, 420 F. Supp. 3d 1089, 1099 (S.D. Cal. 2019) (collecting cases)).

Plaintiffs argue that the $800,000 that they spent to become eligible for the EB-5 Program created a protectable property interest.[23] However, the Court is not convinced that Plaintiffs' investment is sufficient to convert their request

---

[21] Amended Complaint ¶¶ 74-78.

[22] Motion 19:20-20:8.

[23] Opposition 27:10-18.

for an immigration benefit into a protectable property interest. Although the Court is sympathetic to Plaintiffs' substantial investment, Plaintiffs have no more right to a change of immigration status after investing that money than they did before—Plaintiffs' Form I-485 applications remain subject to the sole discretion of the Secretary. The Court concludes that Plaintiffs fail to plead a protectable property or liberty interest. Accordingly, the Court **GRANTS** Defendants' Motion with respect to Plaintiffs' Due Process claim.

## IV. DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. Defendants' Motion [ECF No. 19] is **GRANTED**.

2. Plaintiff's Amended Complaint [ECF No. 16] is **DISMISSED without prejudice**. Plaintiffs may refile in March 2029, if their applications are still pending at that time—after four years have passed since they submitted their applications.

3. Judgment will issue accordingly.

**IT IS SO ORDERED.**

Dated: August 31, 2026

John W. Holcomb
UNITED STATES DISTRICT JUDGE